JDN

**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Henry Enrique Montoya, Jr., | ) No. CV 08-1999-PHX-DGC (ECV) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Dora Schriro, et al., | ) |
| Defendants. | ) |

Plaintiff Henry Enrique Montoya, Jr. filed this civil rights action under 42 U.S.C. § 1983 against multiple Arizona Department of Corrections (ADC) officials (Doc. 25).[1] Before the Court is Defendant Billy Austin's Motion to Dismiss for failure to exhaust administrative remedies (Doc. 41),[2] to which Plaintiff did not respond. The Court will grant Austin's Motion to Dismiss and terminate the action.

**I.    Background**

Plaintiff's claims arose during his confinement at the Arizona State Prison Complex-Stiner Detention Unit in Buckeye, Arizona (Doc. 25 at 1).[3] He alleged that on September 1,

---

[1]Upon screening, the Court dismissed Schriro, Ryan, Goldsmith, Sigona, John Doe Deputy Warden, Jane Doe Nurse, John Doe Correctional Officer, and Jane Doe Correctional officer as Defendants (Doc. 28).

[2]The other remaining Defendants—Montgomery, Allen, and Cofield—have not been served (see Docs. 32-33, 35).

[3]Plaintiff is no longer incarcerated (see Docs. 31, 36).

2007, Montgomery and Allen sprayed him with chemical agents while he was naked even though he posed no threat (id. at 5(h)).  Plaintiff claimed that he was then handcuffed and placed on a gurney for 30 minutes before Austin directed Montgomery and Allen to decontaminate Plaintiff by placing him under extremely hot water (id. at 5(h)-5(i)).  Plaintiff asserted that he was screaming that he was on fire for the 10 or 15 minutes he was under the hot water.  He alleged that he was then placed face down on the gurney for three hours, during which time he repeatedly told Montgomery, Allen, Austin, and Cofield that he felt burning pains (id. at 5(i)-5(j)).  Plaintiff stated that whenever he tried to move to alleviate the pain, Montgomery and Allen—pursuant to Cofield's and Austin's orders—pushed Plaintiff back down on the gurney (id.).

The Court found that Plaintiff's allegations stated a claim for excessive force under the Eighth Amendment and directed the four named Defendants to respond (Doc. 28).[4] Austin moved for leave to file a untimely responsive pleading (Doc. 37), which the Court granted (Doc. 40), and Austin filed his Motion to Dismiss (Doc. 41).

**II.    Motion to Dismiss**

Austin moves for dismissal on the ground that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (id.).  In support, he submits the declaration of Aurora Aguilar, a Hearing Officer at the ADC's Central Office in Phoenix (id., Ex. 1, Aguilar Decl. ¶ 1).  Aguilar explains that the ADC inmate grievance system is governed by Department Order (DO) 802—Inmate Grievance System (id. ¶ 3; Attach. A).  She states that a copy of DO 802 is available to all inmates in the library of each unit (id. ¶ 8).  Aguilar further states that under DO 802, inmates may grieve issues related to, among other things, staff, visitation, mail, institutional procedures, medical care, and conditions of confinement (id. ¶ 4).

Aguilar describes the four steps in the prison's grievance system: (1) the inmate attempts to informally resolve the issue by filing an inmate letter; (2) if not satisfied with the

---

[4]Plaintiff's allegations were set forth in Count VII of his Second Amended Complaint (Doc. 25 at 5(h)-5(k)).  Upon screening, the Court dismissed Counts I-VI (Doc. 28).

1   inmate-letter response, the inmate may file a formal grievance to the grievance coordinator;

2   (3) if not satisfied with the grievance coordinator's response, the inmate may file a grievance

3   appeal to the Deputy Warden or Warden; (4) the inmate may appeal the Deputy

4   Warden/Warden's response to the ADC Director, whose response is final (id. ¶¶ 5-6).

5   According to Aguilar, all appeals to the Director are recorded in the Grievance Appeal Log

6   and the Grievance Appeal File, which are both maintained in the Central Office (id. ¶ 9).

7   Aguilar avers that she reviewed the Appeal Log and the Appeal File in the Central Office;

8   however, there was no record that Plaintiff filed any appeals related to the September 1, 2007

9   incident (id. ¶¶ 10-11).

10        Austin submits that based on this evidence, Plaintiff failed to exhaust his

11   administrative remedies for his excessive-force claim and his Second Amended Complaint

12   should therefore be dismissed (Doc. 41 at 4-5).

13        The Court issued an Order notifying Plaintiff of his obligation to respond to Austin's

14   motion (Doc. 42).  This Order informed Plaintiff that if Austin's motion is granted by the

15   Court, it will end his case (id. at 1).  The Order also cited Local Rule of Civil Procedure

16   7.2(i) in its entirety; this rule provides that a party's failure to respond to a motion may be

17   deemed a consent to the granting of the motion (id.).  LRCiv 7.2(i).  Plaintiff was given until

18   September 10, 2010 to respond to the Motion to Dismiss (Doc. 42 at 2).  To date, Plaintiff

19   has not filed a response, and the time for responding has expired.

20   **III.**    **Exhaustion**

21        **A.**    **Legal Standard**

22        Under the PLRA, a prisoner must exhaust available administrative remedies before

23   bringing a federal action concerning prison conditions.  See 42 U.S.C. § 1997e(a); Griffin

24   v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009).  Exhaustion is required for all suits about

25   prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered

26   through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).  And a

27   prisoner must complete the administrative review process in accordance with the applicable

28   rules.  See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

1    Exhaustion is an affirmative defense. <u>Jones v. Bock</u>, 549 U.S. 199, 212 (2007).  Thus,
2    the defendant bears the burden of raising and proving the absence of exhaustion. <u>Wyatt</u>, 315
3    F.3d at 1119.  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)
4    motion, a court may look beyond the pleadings to decide disputed issues of fact. <u>Id.</u> at 1119-
5    20.  Further, a court has broad discretion as to the method to be used in resolving the factual
6    dispute.  <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 369 (9th
7    Cir. 1988) (quotation omitted).

8    **B.    Analysis**

9    In his verified Second Amended Complaint, Plaintiff indicates that administrative
10   remedies were available for his claim, but he states that he did not submit a grievance or an
11   appeal because he feared for his life and was afraid that the defendants named in Count VII
12   would kill him if he sought administrative relief (Doc. 25 at 5(k)-5(l)).  Plaintiff also states
13   that he was on suicide watch from August 6, 2007 until September 13, 2007, during which
14   time he did not have any writing materials (<u>id.</u> at 5(l)).

15   Plaintiff need only exhaust available remedies.  Any theoretically available remedies
16   prison officials prevented him from pursuing need not be exhausted.  <u>See</u> <u>Abney v.</u>
17   <u>McGinnis</u>, 380 F.3d 663, 667 (2d Cir. 2004) (inability to utilize inmate appeals process due
18   to prison officials' conduct may justify failure to exhaust); <u>Mitchell v. Horn</u>, 318 F.3d 523,
19   529 (3d Cir. 2003) (remedies prison officials prevent a prisoner from utilizing are not
20   "available" for § 1997e(a) purposes) (citation omitted); <u>Lyon v. Vande Krol</u>, 305 F.3d 806,
21   808-09 (8th Cir. 2002).  The Second Circuit has found that "threats or other intimidation by
22   prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal
23   grievance . . . ." <u>Hemphill v. New York</u>, 380 F.3d 680, 688 (2d Cir. 2004).  The <u>Hemphill</u>
24   Court devised a multi-step approach for resolving whether remedies were rendered
25   unavailable or whether a defendant's exhaustion defense was estopped by threats made to
26   the plaintiff.  <u>Id.</u>  First, a court must determine if remedies existed and whether the defendant
27   forfeited or waived the defense of nonexhaustion.  If remedies were available, a court is to
28   "consider whether 'special circumstances' have been plausibly alleged that justify the

1  prisoner's failure to comply with administrative procedural requirements."  Id. at 686.

2  Here, the Court finds that Austin has not forfeited or waived a nonexhaustion defense,

3  and he submits evidence that a grievance system was available for Plaintiff's excessive-force

4  claim (Doc. 41, Ex. 1, Aguilar Decl. ¶¶ 3-5).  Thus, under the Hemphill inquiry, the Court

5  must determine if Plaintiff's allegations concerning his fears and lack of writing materials

6  justify his failure to file a grievance.  Plaintiff alleges that he was afraid of retaliation if he

7  pursued administrative remedies; however, he does not explain why he held this fear.  He

8  does not claim that he was threatened by any specific official or Defendant, nor does he

9  indicate whether his fear was based on a previous attempt to file grievances or other inmates'

10  experiences when using the grievance system.  As to the lack of writing materials, Plaintiff

11  does not allege that he requested and was denied writing materials while he was on suicide

12  watch, nor does he explain why he could not attempt to grieve his claim upon release from

13  suicide watch.  Without more, Plaintiff's general assertions are insufficient to justify his

14  failure to attempt to use the grievance system.

15  Moreover, in failing to respond to Austin's motion, Plaintiff did not refute evidence

16  that a grievance system was available and he failed to avail himself of that system.  On this

17  record, the Court finds that Austin has met his burden to demonstrate nonexhaustion, and the

18  Motion to Dismiss will be granted.

19  **IV.    Lack of a Response**

20  Alternately, the Court has the discretion under Local Rule of Civil Procedure 7.2(i)

21  to grant Austin's motion in light of Plaintiff's failure to respond.  As stated, Plaintiff was

22  specifically warned of this possibility in an Order from the Court (Doc. 42).  Previous Court

23  Orders also repeatedly warned Plaintiff that failure to comply with any order of the Court

24  could result in dismissal (Docs. 5, 23, 28).

25  Failure to comply with a district court's local rule is a proper ground for dismissal.

26  Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995).  But before dismissal on this basis, the

27  Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the

28  court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public

1   policy favoring disposition of cases on their merits; and (5) the availability of less drastic

2   sanctions." Id. at 53 (quoting Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)).

3   If the court does not consider these factors, the record may be reviewed independently on

4   appeal for abuse of discretion. Henderson, 779 F.2d at 1424.

5       Here, the first two factors favor dismissal. "[T]he public's interest in expeditious

6   resolution of litigation always favors dismissal," Yourish v. Cal. Amplifier, 191 F.3d 983,

7   990 (9th Cir. 1999), and the second factor favors dismissal in most cases. Wanderer v.

8   Johnston, 910 F.2d 652, 656 (9th Cir. 1990). In the instant case, the Court finds that the

9   public's interest in expeditiously resolving this litigation and the Court's interest in managing

10  the docket weigh in favor of dismissal. The third factor also favors dismissal. There is no

11  risk of prejudice to Austin to grant his motion.

12      Public policy favors disposition of cases on their merits, so the fourth factor weighs

13  against dismissal. Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002).

14      The final factor requires the Court to consider the availability of less drastic sanctions.

15  Plaintiff was given ample time to respond to Austin's Motion to Dismiss, which was filed

16  over two months ago. The Court explicitly warned Plaintiff that failure to respond could

17  result in the granting of the motion (Doc. 42). Plaintiff nonetheless failed to respond or move

18  for an extension. Thus, in weighing this last factor, the Court finds that dismissal without

19  prejudice is an available and less drastic sanction in this case.

20      In sum, the five-factor analysis supports dismissal for failure to respond to the Motion

21  to Dismiss. The Court's decision to grant the motion in these circumstances is further

22  supported by the fact that it is premised upon a local rule that expressly permits the Court to

23  summarily grant unopposed motions. Ghazali, 46 F.3d at 53 ("Only in rare cases will we

24  question the exercise of discretion in connection with the application of local rules"), quoting

25  United States v. Warren, 601 F.2d 471, 474 (9th Cir. 1979).

26      Austin's Motion to Dismiss will therefore be granted based on Plaintiff's failure to

27  respond. See LRCiv 7.2(i).

28

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant Austin's Motion to Dismiss (Doc. 41).

(2) Defendant Austin's Motion to Dismiss (Doc. 41) is **granted**; the Second Amended Complaint is dismissed without prejudice for failure to exhaust; in the alternative, it is dismissed without prejudice pursuant to Local Rule of Civil Procedure 7.2(i).

(3) The Clerk of Court must enter judgment accordingly.

DATED this 18th day of October, 2010.

David G. Campbell
United States District Judge